UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Domino's Pizza Franchising, LLC,

    Plaintiff,

v.

VTM Pizza, Inc., and Terrence M. Williams,

    Defendants.
_____/

Case No. 15-13312

Honorable Nancy G. Edmunds

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [17]**

Plaintiff Domino's Pizza Franchising, LLC, filed its complaint on September 18, 2015, alleging three counts of breach of contract pursuant to a franchise agreement. The clerk entered defaults against Defendants VTM Pizza, Inc., and Terrence M. Williams on October 28, 2015. (Dkt. nos. 11, 12.) On November 30, 2015, Plaintiff filed a motion for default judgment (dkt. no. 17) against Defendants, seeking injunctive relief, damages in the amount of $188,010.42 plus attorneys' fees in the amount of $39,317.97.

**A.   Background**

Certificates of service show that Defendants received service of the summons and complaint on October 6, 2015. (Dkt. nos. 6, 7.) Defendants have not appeared, nor otherwise attempted to defend this case. The Court held a hearing on this matter on December 7, 2015, and took further evidence related to damages. In response to the Court's request for additional evidence related to attorneys fees in this matter, Plaintiff thereafter submitted supplemental exhibits and served same by mail upon Defendants. (Dkt. nos. 19, 20.)

The Court treats the well-pleaded allegations in the complaint, other than those related to the amount of damages, as true. *See* Fed. R. Civ. P. 8(b)(6); *see also Antoine v. Atlas Turner, Inc.*, 66 F.3d 105 (6th Cir. 1995). Plaintiff's claims are based on a franchise agreement entered into by Plaintiff and Defendant VTM on or about December 16, 2009. (Compl. ¶ 8, Ex. A at 39.) The agreement was a renewal. Contemporaneous with the execution of the franchise agreement, Defendant Terrence Williams, the sole shareholder of VTM, executed a Covenants of Owners document, under which he guaranteed performance by VTM under the franchise agreement and agreed to be bound by the franchise agreement. (Compl. ¶ 9, Ex. B.)

Plaintiff alleges that Defendants breached the franchise agreement when they "repeatedly failed to comply with Domino's requirements and specifications concerning the quality, service and cleanliness of their Store and the products and services sold, offered for sale, or provided at the Store." (Compl. ¶ 15.) Plaintiff also alleges that Defendants failed to submit profit and loss statements, as required under section 14.2 of the franchise agreement. (Compl. ¶ 16.) Plaintiff alleges that between May 2014 and April 2015, it sent Defendants "9 separate notices of default based on their repeated failure to comply with Domino's standards and meet their obligations under the Franchise Agreement." (Compl. ¶ 17.) In April 2015, Plaintiff notified Defendants that the Franchise Agreement was terminated, after Defendants had received a score of 44 out of a possible 100 on an evaluation of the Store's operations. (Compl. ¶ 18.) On April 29, 2015, the parties entered into a Franchise Stay Of Enforcement Of Termination Agreement ("Stay Agreement") under which Defendants were given time to sell the store and transfer the franchise to a new owner. (Compl. ¶ 19, Ex. C.) The parties extended the Stay Agreement several times yet

Defendants were unable to sell their store. (Compl. ¶ 28.) On or about September 6, 2015, Defendants ceased operating the store as a Domino's store. (Compl. ¶ 29.) According to Plaintiff, Defendants continued to operate a pizza business, now called "Five Kids' Pizza," in the same location. (Compl. ¶ 31.) Five Kids' Pizza offers pizza on a carry-out and delivery basis and offers substantially the same items it offered while it was operated as a Domino's Pizza store. (Compl. ¶¶ 32, 33.) This is in violation of the franchise agreement, section 20.2, which prohibits, for a period of one year after termination of the franchise agreement, engaging or investing in "any carry-out or delivery pizza store business located at the premises of the Store or within ten (10) miles of the premises of the Store . . . ." (Compl. ¶ 30, Ex. A.)

The Complaint alleges three counts of breach of contract. First, Plaintiff alleges that Defendants breached the franchise agreement by failing to perform post-termination obligations pursuant to the franchise agreement. Next, by failing to pay money due for royalty fees, advertising contributions, technical fees and equipment and product Defendants had purchased. (Compl. ¶ 44.) Finally, by failing to operate the store in compliance with franchisor Domino's standards and specifications resulting in the closing of the store and a loss of future royalty fees, advertising fees and profits through the remainder of the term of the franchise agreement. (Compl. ¶ 50.)

According to Plaintiff, Defendant(s) engage in the following, which are breaches of the post-termination provisions of the franchise agreement:

1. Defendant Williams "owns, is engaged in and/or employed by, and advises, assists and has an interest in Five Kids' Pizza." (Compl. ¶ 34.)

2. "Defendants are using the operational methods and procedures set forth in Domino's confidential Operations Manual in operating Five Kids' Pizza store" and they "have failed and refused to return that Manual to Domino's," as required by sections 18.3(a) and 20.5 of the franchise agreement. (Compl. ¶ 35.)

3. Defendants did not cease using the Domino's System and Domino's Marks as required by section 18.3 (b), (e) of the franchise agreement. (Compl. ¶ 39.)

4. Defendants continued to use the phone number of the former Domino's Pizza Store and did not execute the documents or take steps necessary to enable Domino's to utilize the telephone number as required by section 18.3(c) of the franchise agreement. "[T]he local telephone directory and various online directories continue to identify the telephone number of Five Kids' Pizza as being the number of a Domino's Pizza Store." (Comp. ¶ 36.)

Plaintiff seeks injunctive relief, a monetary judgment, and attorneys fees and costs. (Pl.'s Mot. Default J., Prayer for Relief.)

**B.   Injunctive Relief**

Case law suggests that injunctive relief by way of a default judgment is available, especially in cases like this one, where there is no doubt regarding Defendants' notice of the proceedings. *See e.g., U.S. v. Aiken*, 867 F.2d 965 (6th Cir. 1989) (maintaining a permanent injunction and default judgment against a mining company after the sole shareholder's death).

Plaintiff has shown that it will suffer irreparable harm if an injunction is not issued enjoining Defendants from continuing to use the Domino's telephone number, to operate the pizza business in the same location, to use the Domino's marks and to fail to return the

operating manual. Plaintiff has demonstrated likely success on the merits with respect to its breach of contract claims in light of Defendants' default. The granting of such an injunction will not result in any greater harm to Defendants in light of their failure to respond to the Complaint and the default and the granting of such an injunction is in the public interest where Defendants continue to operate in defiance of the terminated franchise agreement.

The Court will grant those terms of injunctive relief sought by Plaintiff enjoining Defendants from operating any carry-out or delivery pizza store business at the former Domino's Pizza store location for a period of one year and using telephone numbers that were used in connection with the former store; and providing that Defendants will take steps to assign the telephone number to Plaintiff or its designee, to delete listings for the former store in the Yellow Pages and any other published or online directory and to terminate any directory listing that indicates that the former Domino's Pizza phone number, 423-569-2000, is affiliated with the current Five Kids' Pizza business.

**C.     Damages**

Plaintiff alleged in its motion that it is entitled to $188,010.42 and an additional $39,317.97 in attorneys fees. Plaintiff alleges that at the time that Defendants "ceased operating the Store as a Domino's Pizza® store, Defendants owned (sic) Domino's monies for royalty fees, advertising contributions, technical fees, and equipment and product they purchased." (Compl. ¶ 44.) Plaintiff provided the declaration of Leonard Barr, Manager-Unit Controller in the Finance Department of Domino's Pizza, LLC, in which Mr. Barr stated that "[a]s of September 6, 2015, when VTM ceased operating the Store as a Domino's Pizza Store, VTM owed Domino's $5,133.93 for royalty fees, advertising contributions, technical

fees and fees for equipment and product it had purchased." ((Pl.'s Mot. Default Ex. 1, ¶¶ 1, 3; Compl. ¶ 46.) At the hearing, Mr. Barr testified that this amount was reduced by Defendants' previously earned profit-sharing, therefore the past due amount was reduced from $5,133.93 to $2,798.69.

Plaintiff also seeks lost royalties that it would have earned for the remainder of the ten-year term of the franchise agreement, which would have expired on May 29, 2020. (Compl. ¶ 48; Barr Decl. ¶ 4, Pl.'s Mot. Default J., Ex. 1 ¶ 4.) The Court may award future royalties lost due to franchisee's breach. *See e.g., PSP Franchising, LLC v. Dubois*, 2013 WL 782901, at *2 (E.D. Mich. Feb. 28, 2013) (Murphy III, J.) (citing *American Speedy Printing Centers, Inc. v. AM Mktg., Inc.*, 69 Fed. Appx. 692 (6th Cir. 2003)). Section 6.1 of the franchise agreement requires the franchisee to pay a royalty of 5.5% of the weekly royalty sales of the Store. (Compl., Ex. A.) Under section 13.1, the franchisee is obligated to pay 3% of the weekly royalty sales of the store to the advertising fund, with the franchisor having the right to increase the contribution from time to time by an amount not to exceed 1%. (Compl. Ex. A.) At the hearing, Joseph Devereaux, Director of Franchising Services, testified that the due to Amendments in 2009 and 2012, the advertising basis is now 6%.

With respect to the calculation of future contributions, Mr. Barr stated in his declaration that

> The term of the Franchise Agreement was ten years, commencing on May 30, 2010. Based on the gross sales that VTM's franchise attained in the 12 months leading up to September 5, 2015 (the last day it operated as a Domino's Pizza® store), and assuming VTM's former franchise experienced no increase in sales from that point forward, Domino's would have been paid $208,032.68 in royalty fees and advertising contributions over the remaining term of the Franchise Agreement, which would have expired on May 29, 2020.

> Using a discount rate of 5.9%, which is Domino's cost of capital, the net present value of that amount is $181,349.57[1].
>
> As a result of not having to provide support and related services to VTM's former franchise, Domino's will save $2,280 in expenses (from, for example, travel expenses and telephone, postage and printing costs) over the remaining term of the Franchise Agreement. Accordingly, Domino's net loss is $179,069.57.

(Barr Decl., Pl.'s Mot. Default J., Ex. 1 ¶¶ 4, 5.)

Plaintiff has shown support for the value of lost royalty fees and advertising contributions it seeks. Plaintiff provided evidence via witness testimony at the hearing and documents to support the amount of damages, including testimony and a spread sheet extrapolating royalty fees and advertising fees based on the average of Plaintiff's weekly sales for the 52 weeks from August 2014 through August 2015. This spread sheet was prepared by Mr. Barr, who also testified at the hearing. (Identified as Plaintiff's Exhibit 105.) The Court will grant Plaintiff's request for damages and finds the record supports damages in the amount of $181,868.26[2]

### D.  Attorneys' Fees

The franchise agreement, section 22.2, requires payment of reasonable attorneys fees, court costs and expenses of litigation in the event that Plaintiff commences any legal or equitable action to enforce the terms of the franchise agreement. (Franchise Agr. § 22.2, Compl. ¶ 27 and Ex. A.) Plaintiff submitted a declaration of Norman M. Leon, one of two

---

[1] The motion for default judgment cites the net present value as $182,876.49 (Pl.'s Br. In Support Of Mot. Default J. 5.) Yet the amount stated in Barr's declaration and on the spreadsheet is $181,349.57, which the Court will use. (Pl.'s Supp. Ex. 105.)

[2] The total of $181,349.57 net present value of royalties and advertising, minus $2,280 in expenses saved by Plaintiff, plus $2,798.69 past due.

attorneys from the law firm DLA Piper, LLP, who appears on behalf of Plaintiff. (Pl.'s Mot. Default J. Ex 2.) Mr. Leon sets forth both his own and colleague John Verhey's legal backgrounds and credentials. Mr. Leon testified that his billing rate is $565 per hour and he has spent 11.50[3] hours on this matter through November 23, 2015. Mr. Verhey's billing rate is $616.25 per hour and Mr. Verhey has spent 43.80 hours on this matter through November 23, 2015. This is a total of $33,479.00 in attorneys' fees and $275.94 in costs. As Mr. Leon notes in his supplemental declaration, at the hearing the Court expressed concern with the extent of legal fees in this matter. In light of this, Plaintiff is not seeking recovery for attorneys' fees after November 23, 2015, and is not seeking attorneys' fees for Mr. Leon's time on the file. (Suppl. Decl. Leon, Suppl. Exs., dkt. 19.) The DLA Piper attorneys' fee sought by Plaintiff is $26,981.50; this amount is reduced to $26,868.55 to account for the .20 hour attributed to Mr. Verhey.

Plaintiff is also represented by local counsel, who submitted an affidavit in which he testifies that the total amount of attorney fees and paralegal costs incurred by Domino's in this action through Mr. Hood's firm, Clark Hill, is $5,057 (11.4 attorney hours at $405 per hour and 2.2 paralegal hours at $200 per hour) and costs of $506.03. (Hood Supp. Aff.,Supp. Ex. 3.) Local counsel did not include professional time or costs spent arranging for the admission of out-of-state counsel. The Court has reviewed the billing records and finds that the attorneys' fees and costs in the amount of $32,431.58 are reasonable as

---

[3] The invoices show that Mr. Leon has spent 11.70 hours on the matter for a total $6,610.50. (Suppl. Exs. Ex. 2.) Mr. Verhey as spent 43.60 hours on this matter for a total $26,868.50. (*Id.*)

required by the franchise agreement and in light of the work on the file, which included the filing of a motion and brief seeking a preliminary injunction prior to Defendants' default.

**E.  Conclusion**

**IT IS ORDERED that Plaintiff's motion for default judgment [17] is GRANTED.**

**IT IS FURTHER ORDERED** that the Court will enter judgment against Defendants jointly and severally in the amount of $181,868.26 and $32,431.58 in attorneys fees.

**IT IS FURTHER ORDERED** that

1.  Defendants VTM Pizza, Inc. and Terrence M. Williams and their agents, servants, employees and all those individuals in active concert or participation with Defendants, are hereby permanently enjoined from:

   a. Directly or indirectly, or through or on behalf of or in conjunction with any other person, partnership or corporation, owning, engaging in, being employed by, advising, assisting, investing in, franchising, making loans to, or having any other interest, whether financial or otherwise, in any carry-out or delivery pizza store business located at, or within 10 miles of, Highway 27 (Alberta Street) and Church Avenue in Oneida, Tennessee (the location of the former Domino's Pizza store), for a period of one (1) year from entry of this judgment;

   b. Using the telephone numbers used in connection with the operation of Defendants' former Domino's Store, including the number 423-569-2000.

2.  Defendants VTM Pizza, Inc. and Terrence M. Williams shall immediately execute such documents and/or take such steps as may be necessary or appropriate to assign the

telephone number 423-569-2000 to Plaintiff Domino's Pizza Franchising, LLC or its designee; and

3.      Defendants VTM Pizza, Inc. and Terrence M. Williams shall immediately take such steps as may be necessary or appropriate to delete the listings for their former Domino's Store in the Yellow Pages and any other published or online directory, and to terminate any other directory listing that indicates that the telephone number 423-569-2000 is affiliated in any respect with Defendants' current pizza business Five Kids' Pizza.

**SO ORDERED.**

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  December 31, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 31, 2015, by electronic and/or ordinary mail.

s/Carol J. Bethel
Case Manager

10